## No. 11,920.

BOARD OF COUNTY COMMISSIONERS OF PITKIN COUNTY v.
BASALT UNION HIGH SCHOOL DISTRICT.

Decided October 24, 1927.

Action in mandamus to compel certification and levy
of a tax for school purposes. Judgment for plaintiff.

*Affirmed.*

*On Application for Supersedeas.*

1. SCHOOLS—*High School Districts.* There is no statutory limitation that high school districts shall extend into one county only.

2. *High School Districts.* A county superintendent cannot prevent the formation of a union high school district by staying away from the organization meeting when duly notified, nor by refusing to recognize the district.

3. *School Districts—Legality—Limitation.* Under C. L. section 8326, the legality of a school district organization cannot be questioned after it has continued to exercise, undisputed, the prerogatives, and enjoyed the privileges of a legally formed district for the period of one year succeeding the election of its officers.

4. *High School District—Corporation De Jure.* A union high school district organized in substantial compliance with law, held to be a corporation de jure.

5. MANDAMUS—*Writ—Certainty.* In an action in mandamus to compel the certification and levy of taxes for school purposes, the contention that the mandate of the court was uncertain as to amount and method of raising the revenue, overruled, where the school officers could render it certain.

6. SCHOOLS—*Taxation—County Commissioners.* In an action to compel county commissioners to levy a tax for the support of a public school, it is held, that the commissioners having ascertained that the law had been obeyed as to certification of amount required, were not charged with any discretion in making the levy.

7. MANDAMUS—*Parties.* In an action to compel a levy of tax for school
   purposes, the school district being in two counties, one of which had
   made the levy of its share of the tax to be raised, it was not neces-
   sary that it be made a party, the other county having refused to
   make the levy being the proper defendant.

*Error to the District Court of Pitkin County, Hon. John
T. Shumate, Judge.*

Mr. FRANK DELANEY, Mr. J. W. DEANE, for plaintiff in
error.

Mr. C. W. DARROW, Mrs. SADIE H. KORN, Mr. JOHN L.
NOONAN, Mr. WILLIAM F. NOONAN, Mr. HUME S. WHITE,
for defendant in error.

*En Banc.*

MR. JUSTICE ADAMS delivered the opinion of the court.

THIS case is here on writ of error to review the action
of the trial court in directing the issuance of a peremp-
tory writ of mandamus, in a suit brought by defendant
in error, to compel the certification of an amount re-
quired for school purposes, and the levy of a tax to raise
the same. A supersedeas has been applied for, and the
parties ask for final determination now.

The board of county commissioners of Pitkin county
will be referred to as respondent, or the commissioners;
Basalt union high school district in the counties of Eagle
and Pitkin, as the petitioner, or high school district, and
Anna Short, the county superintendent of schools in
Pitkin county, as respondent, or the superintendent. The
action was originally commenced in the district court,
against both of above respondents, in one suit, but they
have docketed the causes separately in this court, and
filed separate assignments of error, No. 11,920 by the
commissioners, and No. 11,921 by the superintendent.
The latter is entitled, "Short, as County Superintend-

ent, etc. v. Basalt Union High School District;" the decision in that case is concurrent with this one, and is reported in 82 Colo. 447, 261 Pac. 461. The two cases should be considered together.

After the issuance of the alternative writ, directed against both respondents, the superintendent demurred thereto. Her demurrer was overruled; she elected to stand thereon and the alternative writ was made permanent. The pleadings in the case against the respondent commissioners were more extensive, and after various motions and demurrers had been disposed of, the case proceeded to trial against the commissioners. Upon consideration of the evidence, the court ordered the issuance of a peremptory writ against the latter also.

The writ contains a full recital of the facts, and commands the superintendent to certify to the commissioners, the amount of money necessary to be levied upon all taxable property in Pitkin county, for the purpose of raising and providing the amount of money necessary to be produced and furnished by that county to the school district, for its use in paying the salaries of teachers employed or to be employed during the school year of 1926–1927, and other lawful expenses, in the manner provided by law. The commissioners are commanded to levy the requisite tax.

The petitioner, the union high school district, is situate partly in Pitkin county and partly in Eagle county. It is embraced within the territory of five contiguous school districts. A majority, if not all of their school boards deemed it advisable to establish a union high school. Upon notice of two or more of their secretaries, to the county superintendents of schools in Eagle and Pitkin counties, an organization meeting was held on July 28, 1925, for the purpose of establishing a union high school district, and for the transaction of any other business connected therewith. Notice of the meeting was given to each member of the several boards, fifteen in all. Fourteen accepted the call; thirteen voted in favor

of the formation of the new high school district, and one against. Mrs. Dora Greiner, the Eagle county superintendent of schools, presided at the meeting. Respondent, Mrs. Anna Short, the Pitkin. county superintendent, stayed away, although duly notified. She was opposed from the beginning to the formation of the district, as she deemed it unwise; she therefore refused to attend then or at any time, or to recognize the existence of the district, or the rights of the new district officers. It is declared in the testimony that Mrs. Short gave or sent out some of the notices of the first meeting, but she denies it.

On August 19, 1925, the new union high school district elected its officers; they qualified, and have continued to act as such ever since their election. Ever since its organization, the district has continued to exercise the prerogatives and enjoyed the privileges of a legally formed district. Its right thereto has not been heretofore called into question in any court of law; it has been recognized as a lawful union high school district by the several school districts in whose territory it was formed; also by the county officials of Eagle county, and the patrons of the school, or most of them, but not by the respondent county officers of Pitkin county. The exercise of the prerogatives of the new high school district as above, continued for more than a year after the election of its officers, and consisted, in addition to the above, in the incurring of bills for supplies and services and paying for same; in the maintenance of a high school, the employment of two teachers, the attendance of thirty or more pupils during the school year, and the teaching of high school subjects. Also by the levy and collection of taxes in Eagle county, but none in Pitkin county. Levies in Eagle county were for 1925–26, and for 1926–27. The board minutes indicate that an opinion of the Attorney General of Colorado was read, approving the regularity of the proposed Pitkin county levy for the new high school district for the year 1926–27.

The directors held from 9 to 13 meetings, and transacted business pertaining to the school. Funds were also temporarily provided by one of the school districts involved, the joint school district No. 1; the new high school supplanted a high school course formerly carried on in the district last named. The exercise of the functions of the new high school district was at all times open and notorious, and in August, 1926, it published its annual financial statement. Coming directly to the matter that precipitated this suit: In October, 1926, the directors determined the amount required for school purposes, including the salaries of two teachers, for a period of nine and one-half months. The board certified the amount, through its secretary, to each county superintendent of schools, one in Eagle and the other in Pitkin county. The Eagle county officials honored the certificate and levied their share of the tax, but the Pitkin county superintendent and commissioners refused and have continued to refuse to honor it, or to accord any recognition to the new high school district. It is to compel the certification by the Pitkin county superintendent, and the levy by the Pitkin county commissioners of their share of the tax, that this suit is brought.

1. The Basalt union high school district was organized in substantial compliance with C. L. 1921, §§ 8382 and 8391.

Section 8382 reads: ''Whenever the school boards of two (2) or more contiguous school districts shall each deem it advisable to establish a union high school, the county superintendent shall, at the request of two (2) of the secretaries of the boards, call a meeting of the boards interested by giving personal notice to each member, which meeting shall elect by ballot from among the members of said boards, if a majority of the members of each board are present, a committee of three (3), to be known as the high school committee of such union school. The county superintendent shall be, ex officio, an additional member of said committee and shall preside at the meet-

ings thereof.   There shall be elected a secretary of such committee, and if need be a treasurer.   *   *   *   High schools formed under the provisions of this section shall be open to all children from all districts of the county in which they are so formed, provided such children are qualified as hereinafter provided.''

Section 8383 modifies the above in a manner not material to the issues here.   Section 8391 reads: ''In all counties of the fourth and fifth classes, all school districts lying adjacent to an incorporated town or city may be organized into a union high school district.''

Section 8391 supplements the former statute.   The latter section was enacted in 1903, and postdates § 8383 by 14 years.   They may be easily read together, and counsel for respondents have offered no acceptable reason in support of their contention that § 8391 is a nullity. One argument advanced is that the high school district is in two counties, but there is no limitation that it shall be in one only, and it is a matter of common knowledge, as well as statutory law, that school districts are not always co-extensive with county boundaries.   Section 8392 negatives the supposition.   It reads: ''The county commissioners of each of said counties are required to levy a tax of not less than one or more than three mills upon all taxable property in such high school districts when the same shall have been organized, for the support of such school.   Such levy shall be made annually after the organization of the said district shall have been made, at the same time that other taxes are levied.''

2. The superintendent of schools of Pitkin county could not prevent the statutory formation of a union high school district by staying away from the meeting when duly notified, nor by refusing to recognize the existence of such district.   It is significant that the vote in favor of organizing the district was almost unanimous.

3. Respondents' question as to the legality of the formation of the high school district, is foreclosed by the one

year statute of limitations, C. L. 1921, § 8326. This section is the same as R. S. 1908, § 5917, construed in *People ex rel. v. Girardot,* 70 Colo. 444, 202 Pac. 111. The statute is quoted in that opinion. The statute, and the reasoning in the case spoken of, are applicable to the facts here, and we shall follow them both. The officers were elected August 19, 1925. This suit was commenced December 10, 1926, and the return to the alternative writ was filed thereafter.

4. Counsel for respondents quote the ruling in *Jones v. Aspen Hardware Co.,* 21 Colo. 263, 40 Pac. 457, 29 L. R. A. 143, 52 Am. St. Rep. 220, that to constitute a de facto corporation, there must be either a charter or a law authorizing the creation of such a corporation, with an attempt in good faith to comply with its terms, and also a user or attempt to exercise corporate powers under it. Quite so, but reference to the above statement of facts will show a concurrence of all of these conditions, even if we regard it as only a de facto corporation. But we hold it to be a corporation de jure. The law was substantially complied with.

5. The chief delinquency of the respondent superintendent and commissioners consisted in their failure to observe the provisions of an act entitled, "An act relating to the salaries of public school teachers and providing funds with which to pay the same." L. 1921, ch. 214, C. L. 1921, ch. 165 D, §§ 8446–8453, as amended by L. 1923, ch. 166. No amendments since those of 1923 are involved. The above sections indicate, among other things, the requirements of certifications to be made by county superintendents of schools, and levies by county commissioners. Counsel for respondents go much further into detail about the above provisions than we think necessary. We refer to them only in a general way, because the underlying purpose of the whole action is not to determine *how* the district shall obtain money by taxation, but whether or not it shall get it at all. Its existence as a union high school district having been

settled, its right to its share of the public revenues follows as a matter of course. Other imaginary difficulties will solve themselves. As presented here, they are only abstract questions of law, and only such as are incident to the daily experience of public officials throughout the state. We have no doubt of the ability of the Pitkin county officers to cope with them. The same may be said of other sections of the school laws and revenue act discussed in respondents' briefs.

6. Counsel for respondent commissioners claim that the mandate of the court is uncertain; that they do not know how much to raise, nor how. We think counsel overestimate their difficulties. They know the actual amount of money required, the valuation of taxable property in that part of the union high school district in Eagle county, and the same in Pitkin county, the total thereof, and the proportionate share to be raised by each county; they have been informed of the mill levy required. There is no uncertainty as to any of the amounts, and now that it has been ordered that the levy shall be made, we are confident that respondent commissioners, with the assistance of the writ and their own official records, will not need the aid of the court in any simple problems of computation, nor is this fine detail required of the court, as long as it is made plain what the commissioners are required to do, as it is here. Certum est quod certum reddi potest.

7. The levy for the support of the union high school should have been made when other levies were made. It was not done, and now counsel for the respondent board of county commissioners claim that if made it will exceed the statutory limitation of five mills, due to other levies which preceded it. But the court found otherwise, and the evidence, showing definite figures as to total assessed valuations, sustains the conclusions of the court. We must approve of the court's findings.

8. Counsel for respondents insist that if petitioner has a case, it is for the apportionment of funds, as pro-

vided in Laws 1923, ch. 166, sec. 2. They are mistaken. If the county superintendent of schools in Pitkin county and the board of county commissioners of the same county persist in their denial of the existence of the Basalt union high school district, the district will never obtain any money by taxation in Pitkin county, through levy or by apportionment or otherwise. As stated above, the action against the commissioners is to compel them to levy a tax for the support of a public school, and the commissioners, having ascertained that the law has been obeyed, are not charged with any discretion in the matter of making such levy. C. L. 1921, § 8287.

9. From the fact that the high school district is situate in the counties of Eagle and Pitkin, it is argued by counsel for the respondent, that the board of county commissioners for Eagle county should have been joined. The answer is that Eagle county has done its duty—made its levy of its share of the tax, to be raised in that county—hence no relief is sought against them. It was therefore unnecessary to make the commissioners of Eagle county parties respondent.

10. The diligence of counsel for plaintiff in error has led them to a study of numerous provisions of the school laws and other laws, not bearing on the questions involved. We have considered them all, but have mentioned only those necessary to our decision. Other references in the briefs are not in point, and it would only tend to unduly prolong this opinion by taking up and disposing of irrelevant matters. There was no error in the admission or rejection of evidence. If all that counsel desired had been admitted, it would not have clouded the findings of the court in favor of the issuance of the peremptory writ, nor changed the result.

Judgment affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE CAMPBELL not participating.