**STANDARD METALS CORPORATION and State Compensation Insurance Authority, Petitioners,**

v.

**Anacleto Max GALLEGOS; the Industrial Claim Appeals Office of the State of Colorado; and Director, Division of Labor, Respondents.**

No. 88CA1590.

Colorado Court of Appeals, Div. V.

June 22, 1989.

Rehearing Denied July 20, 1989.

Certiorari Denied Oct. 16, 1989.

Paul Tochtrop, Denver, for petitioners.

Candelaria & Spitzer, Roger M. Candelaria, Durango, for respondent Anacleto Max Gallegos.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Michael P. Serruto, Asst. Atty. Gen., Denver, for respondent Industrial Claim Appeals Office of the State of Colo.

Opinion by Judge JONES.

Standard Metals Corporation and the State Compensation Insurance Authority (petitioners) seek review of the final order of the Industrial Claim Appeals Office (Panel) which affirmed the order of the Administrative Law Judge (ALJ). The ALJ reopened the claim of Anacleto Max Gallegos (claimant) on the premise that a mistake of fact had occurred in that new scientific evidence had been developed causally connecting his disease to his employment. We affirm.

Claimant filed a request for workmen's compensation benefits in May 1982 alleging that his renal disease was attributable to his occupation as a miner. That claim was denied on December 20, 1982, by the ALJ, who concluded that claimant's disease was not an "occupational disease" within the

meaning of the Workmen's Compensation Act (Act).

Claimant did not seek review of the December 20, 1982, order. In February 1984, he filed a petition to reopen. Attached to his petition was a physician's report alleging that claimant's condition had worsened and that new scientific and medical research established that his kidney disease was related to long term on-the-job exposure to nephrotoxic airborne particles.

After the hearing on claimant's petition, the ALJ noted that two physicians, one of whom had been claimant's treating physician, opined, based on reasonable medical probability, that claimant's renal disease was an occupational disease resulting from his employment as a miner. The testimony of claimant's treating physician represented a change from his prior opinion, while the testimony of the second physician had not been considered previously. Regardless of these findings as to the medical evidence, on March 7, 1986, the ALJ denied claimant's petition based on his conclusion that there was no jurisdiction under the Act to consider the reopening of a claim which had been denied and dismissed and in which no "award" had ever been entered.

Claimant did not appeal this March 7, 1986, order. Instead, he filed a second petition to reopen on August 20, 1986, citing *Padilla v. Industrial Commission*, 696 P.2d 273 (Colo.1985). In the second petition he asserted that in the March 7, 1986, order, the ALJ had denied his first petition based on an erroneous interpretation of law. The second petition was denied on November 26, 1986. The ALJ reasoned that, since claimant did not timely appeal the March 7, 1986, order, he could not otherwise seek review of that order regardless of its noncompliance with the law by means of a petition to review. This denial was set aside by the Panel which concluded, based on *Gregorich v. Industrial Commission*, 117 Colo. 423, 188 P.2d 886 (1948), that a petition to reopen is an appropriate vehicle to correct a misapplication of the law even if a claimant has failed to perfect an appeal.

After remand, the ALJ entered an order granting the petition to reopen on October 5, 1987. The Panel also set aside this order because the ALJ appeared to conclude incorrectly in the October 1987 order that the Panel *required* that he grant the petition to reopen and consider the claim on its merits. Consequently, the Panel again remanded the matter to the ALJ to determine, by the exercise of his discretion, if any mistakes in law or fact had been made, and if so, to determine whether they were of the type which would justify reopening of claimant's petition.

On May 3, 1988, the ALJ entered his order which is the basis of this review. He concluded that the December 10, 1982, order was sufficient in itself to establish a mistake of fact because scientific and medical research, and information concerning its application to claimant was not available, understood, presented, or considered at the hearing preceding that order. He also concluded that the ALJ's order of March 7, 1986, was contrary to the statutory provisions governing the reopening of a claim as interpreted by the our supreme court in *Padilla v. Industrial Commission, supra,* and was, therefore, a mistake of law. Thus, the ALJ concluded that these mistakes provided ample cause for reopening under the evidentiary and procedural circumstances and posture of this case.

Further, in addressing the merits of the claim, the ALJ noted that claimant's treating physician now opined, based on a recent study conducted on Washington and Colorado miners, that claimant's renal disease was caused by heavy metal and dust to which he had been exposed as an underground miner. This opinion was shared by an expert in medical toxicology who had reviewed claimant's medical and mine records. This expert based his conclusion on various studies and periodicals which were conducted and published, for the most part, subsequent to 1982. The ALJ distinguished the conflicting medical testimony of two of petitioner's physicians who had examined claimant prior to the December 20, 1982, order by concluding that those

physicians were not familiar with the scientific and medical research referenced by the physicians who believed that claimant's injuries were, in fact, caused by his work as a miner.

Thus, the ALJ concluded that claimant suffered an occupational disease arising out of and in the course of his employment as an underground miner for Standard Metals Corporation. He further concluded that the hazard was not the type to which he would have been exposed but for his employment. The ALJ, thus, ordered petitioners to pay for the reasonable medical, surgical, and hospital expenses necessary to treat and relieve claimant's occupational disease. He further awarded claimant temporary total disability payments commencing January 27, 1984, and continuing as provided by law. The final order of the Panel affirmed the ALJ's order.

## I.

Petitioners contend on review that claimant is barred by application of the doctrine of *res judicata* from relitigating the original March 1986 denial of his petition to reopen. They assert that claimant's "new evidence" could have, and should have, been presented to the ALJ prior to the hearing which preceded the first order of December 1982, and that the ultimate granting of the petition to reopen encourages the relitigation of matters that previously should have been litigated fully. We disagree.

Section 8–53–113, C.R.S. (1988 Cum. Supp.), in relevant part, provides:

"At any time within six years from the date of injury ... the director ... may, after notice to all parties, review and reopen any award on the ground of an error, a *mistake*, or a change in condition." (emphasis added)

 The authority of the director to reopen proceedings extends to all cases terminated by final agency action, including any case closed by the entry of an order denying claims for benefits, expenses, or compensation. *Padilla v. Industrial Commission, supra.* This rule is compatible with the overall beneficent purposes of the

Act, and particularly the remedial authority conferred upon the director by this section.

 Therefore, as the Panel correctly determined, the ALJ erred as a matter of law when he concluded on March 7, 1986, that he lacked jurisdiction to consider claimant's original petition to reopen. This mistake which did not involve an exercise of the ALJ's discretion, provided ample cause for reopening of the case, regardless of claimant's failure to appeal that order. *See Gregorich v. Industrial Commission, supra; see also Ward v. Azotea Contractors,* 748 P.2d 338 (Colo.1987); *Travelers Insurance Co. v. Industrial Commission,* 646 P.2d 399 (Colo.App.1981). To hold otherwise would be inconsistent with the policies underlying the Act.

 While the doctrines of *res judicata* and collateral estoppel are applicable in administrative proceedings to bar a subsequent litigation of an issue of fact which the parties had an opportunity to litigate, *see Industrial Commission v. Moffat County School District RE No. 1,* 732 P.2d 616 (Colo.1987), our supreme court has reiterated that a "final" award in the context of a workmen's compensation claim means only that the matter has been concluded unless reopened. The reopening authority vested in the director is indicative of a "strong legislative policy" that the goal of achieving a just result overrides the interest of litigants in obtaining a final resolution of their dispute in workmen's compensation cases. *Loffland Brothers Co. v. Industrial Claim Appeals Panel,* 770 P.2d 1221 (Colo.1989), citing *Padilla v. Industrial Commission, supra.*

## II.

 The primary issue thus becomes whether developments in medical science, subsequent to an initial denial of benefits, can cast doubt on an original factual determination so as to constitute a "mistake" within the meaning of § 8–53–113, and warrant a reopening of a claim even if the prior order was correct on the evidence as it then existed. We conclude that they can.

In considering cases in which the alleged "mistake" is a misdiagnosis of a condition, the salient concern is whether the claimant should be penalized because of an erroneous disposition, either by award or settlement, when the only fault lies in the imperfection of medical science. 3 A. Larson, *Workmen's Compensation Law* § 81.52(b) (1988). In our view, the denial of a just claim based on mistaken medical predicates should not be perpetuated in the face of corrective scientific knowledge subsequently discovered.

A court's primary task in statutory construction is to give effect to the legislative purpose underlying a statutory enactment. *Johnson v. Industrial Commission*, 761 P.2d 1140 (Colo.1988). It has long been a recognized rule that the Act is to be liberally construed to accomplish its humanitarian purpose of assisting injured workers and their families. *See Finlay v. Storage Technology Corp.*, 764 P.2d 62 (Colo.1988).

In *Grover v. Industrial Commission*, 759 P.2d 705 (Colo.1988), our supreme court recognized that:

"At the time a final award is entered, *available medical information may be inadequate*, a diagnosis may be incorrect, or a worker may experience an unexpected or unforeseeable change in condition subsequent to the entry of a final award. When such circumstances occur, section 8–53–113 provides recourse to both the injured worker and the employer by giving either party the opportunity to file a petition to reopen the award. The reopening provision, therefore, reflects a legislative determination that in 'worker's compensation cases the goal of achieving a just result overrides the interest of litigants in achieving a final resolution of their dispute.' " (emphasis added)

In light of this language in *Grover*, and the principles and purposes underlying the Act, we conclude that, in a workmen's compensation case, when the state of the medical art advances to the point that new evidence becomes available, and such new evidence was not and could not have been previously available to the treating physi-

cian, the fact-finder is justified in concluding that a mistake of fact has been made and in reopening the case. *See Hughes v. Denny's Restaurant*, 328 So.2d 830 (Fla. 1976).

Petitioners sought to show that the medical evidence tendered by claimant in his petition to reopen was available prior to the December 1982 order. However, the September 1982 article referred to by petitioners reveals the significant, but uncertain, nature of the medical information at that time. The article expressly sought "to call attention to renal disease as a cause of excess mortality in miners which *warrants future research*." (emphasis added) In addition, one of petitioner's physicians stated in his September 29, 1982, report that he was "not aware of any data which would directly incriminate mining, either hard rock mining or any other sort of mining with glomerulonephritis and kidney failure...."

The decision to reopen proceedings lies solely in the discretion of the ALJ. *See Travelers Insurance Co. v. Industrial Commission, supra.* Under circumstances, as here, in which the medical technology "available to the treating physician" at the time of the initial order was limited, a petition to reopen based on a mistake of fact may properly be granted and does not constitute an abuse of that discretion. *See Hughes v. Denny's Restaurant, supra.*

### III.

Petitioners further contend that the evidence does not support a finding that claimant's renal disease was work-related. We disagree.

Here, there was evidence that claimant gave a history of dust exposure to the toxicologist who confirmed, based on a review of claimant's medical records, that claimant's employment would have exposed him to the harmful dust over the course of several years. We will not interfere with the determination of the credibility of physicians, and the weight to be given their opinions, which is a matter solely for the ALJ as fact-finder. *See Nova v. Industri-*

*al Claim Appeals Office,* 754 P.2d 800 (Colo.App.1988).

## IV.

◼ Finally, petitioners contend that the Panel erred in not imposing liability on the Subsequent Injury Fund (SIF) because of claimant's work history at other mines. The Panel concluded that petitioners failed to follow the proper procedure to establish SIF liability. We agree with the Panel.

Petitioners have not cited any authority to support their contention of error. They only assert that at the time this matter first came before the ALJ in 1982 there was no requirement that they file a written request for consideration of SIF liability. Petitioners do not dispute the existence of this procedural requirement in 1984 and 1986 when the petitions to reopen were filed. *See* Division of Labor Rule, Part XII, Code Colo.Reg. 1101–3. And, since 1982, they had been aware of claimant's other temporary employment and, therefore, knew of possible SIF liability thereafter.

Under these circumstances, we will not disturb the findings of the Panel regarding the applicability of, and the consequences of the failure to follow, its own procedural rules. *See Saxton v. Industrial Commission,* 41 Colo.App. 309, 584 P.2d 638 (1978); § 8–46–108, C.R.S. (1986 Repl.Vol. 3B).

The order is affirmed.

METZGER and MARQUEZ, JJ., concur.